## COMMONWEALTH vs. PAUL J. CALLAHAN.

Norfolk. March 7, 1989. — June 15, 1989.

Present: WILKINS, LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Homicide. Motor Vehicle*, Homicide, Leaving scene of accident. *Statute*, Construction. *Words*, "Any place to which members of the public have access as invitees or licensees."

In light of a judge's findings accompanying his report of questions of law in a criminal case, this court concluded that a certain privately owned parcel of open land, on which a child operating a "go cart" was struck and killed by a pickup truck driven by the defendant, was not a "place to which the public has a right of access" or "any place to which members of the public have access as invitees or licensees" within the meaning of G. L. c. 90, § 24G (*b*) (motor vehicle homicide), or G. L. c. 90, § 24 (2) (*a*) (leaving the scene of a collision after causing personal injury). [202-205]

INDICTMENTS found and returned in the Superior Court Department on May 22, 1986.

The cases were heard by *John D. Sheehan*, J., and were reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael F. Farrington* for the defendant.

*Charles J. Hely*, Assistant District Attorney (*Stephanie Martin Glennon*, Assistant District Attorney, with him) for the Commonwealth.

O'CONNOR, J. A grand jury indicted the defendant for motor vehicle homicide in violation of G. L. c. 90, § 24G (*b*) (1986 ed.), and for leaving the scene of a collision after causing personal injury in violation of G. L. c. 90, § 24 (2) (*a*) (1986 ed.). These charges resulted from an incident on April 5, 1986, in which a pickup truck driven by the defendant struck eleven year old Stephen Scofield, who was operating a "go cart" on privately owned property known as the "sand pits" in Norfolk. In accordance with the language of the applicable statutes,

each indictment alleged that the offense took place in "[a] place to which the public has a right of access or in [a] place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24G (*b*). G. L. c. 90, § 24 (2) (*a*).[1] The defendant requested a jury trial, but on the second day of trial, after the jury had viewed the site and heard several witnesses, agreed to complete the trial without a jury. After hearing additional evidence, the trial judge found the defendant guilty of both charges. The judge then reserved the case, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), for a report to the Appeals Court. We transferred the case to this court on our own initiative.

The judge reported the following two questions of law: "(1) As a matter of law and based on the facts as presented in this case, was this property a place to which the members of the public had access as invitees or licensees within the meaning of G. L. c. 90, §§ 24G (*b*) and 24 (2) (*a*)? (2) As a matter of law and based on the facts as presented in this case, were Paul J. Callahan and/or Ste[ph]en Scofield invitees or licensees on this property within the meaning of G. L. c. 90, §§ 24G (*b*) and 24 (2) (*a*)?" For reasons discussed below, we answer the first question, "No," do not answer the second question, and reverse the convictions.

The judge's report states the following facts. On April 5, 1986, the defendant drove his pickup truck to a location off Route 115 in the town of Norfolk known as the "sand pits." The "sand pits" is a thirty-three acre parcel owned by Carlo Musto of Westwood, and an adjoining "barren, wide, open,

---

[1] The Commonwealth in its brief correctly observes that, even though punishment under G. L. c. 90, § 24G (*b*), for a death *caused by operating under the influence of drugs or liquor* is permissible only if the vehicle is operated "upon any way or in any place to which the public has a right of access or . . . to which members of the public have access as invitees or licensees," a literal reading of the same section would allow punishment of *reckless or negligent* operation of a motor vehicle resulting in a death no matter where such operation occurs. Nonetheless, the Commonwealth states that "in practice and in this case," it applies the locational restrictions from the clause discussing operating under the influence to the clause discussing reckless or negligent operation. We assume for the purposes of this case that the Commonwealth's interpretation is correct.

and sandy" parcel of unspecified size owned by Steven Small. The two parcels are separated by a ridge, approximately ten to fifteen feet high with sloping sides, that runs several hundred yards from Route 115 to the rear of the site. A thirty-to-sixty foot bluff borders the back of both parcels. There are no structures of any kind on either parcel, but there are tires on the property which form an obstacle course for recreational vehicles.

The report continues: "Even though the property was privately owned, people would enter the property and ride on it on various types of recreational vehicles. This use was without the permission of the owners. All 'No Trespassing' signs, except one, that had been posted at one time had, over the years, been vandalized and removed. The owners were aware that people had been using the sand pits, but they took no affirmative steps to exclude the public. They did notify the Norfolk Police who said that they would patrol the area. A stop sign had been placed on the property by the owners to help traffic exit onto Pine Street. No barriers were ever erected to prevent access to the property."

The accident occurred when the defendant, who had been operating his vehicle in four-wheel drive on the property, drove up an incline and through an opening in the ridge. While traveling at four or five miles an hour, his truck struck Scofield, who was coming down the other side of the ridge in his "go cart." Scofield sustained fatal injuries.

The first question requires that we determine whether the "sand pits" is a "place to which the members of the public had access as invitees or licensees" within the meaning of the relevant statutes. The words, "invitee" and "licensee" as used in G. L. c. 90, are terms borrowed from common law, which at one time distinguished between the duties a landowner owed to a person who was on his land by "invitation," one who was there by "license," and one who was a trespasser. See *Mounsey v. Ellard*, 363 Mass. 693, 695 (1973). The Legislature's use of the words, "invitee" and "licensee" in c. 90 can be traced to our decision in *Commonwealth v. Paccia*, 338 Mass. 4 (1958). In that case we held that G. L. c. 90, § 24, which at

that time punished the operation of a motor vehicle while under the influence of alcohol upon any way or in any "place to which the public has a right of access," could not be applied to a motorist apprehended on a privately owned road which was used by the public but in which the public had no general easement as of right. *Id.* at 5, 6. See *Commonwealth* v. *Hart*, 26 Mass. App. Ct. 235, 237-238 (1988) (discussing *Commonwealth* v. *Paccia, supra*). We reasoned that "[i]f the Legislature had wished to include areas . . . to which the members of the public have access only as business invitees or licensees, within the penal prohibitions of § 24, it would have been appropriate for it to have made a clear and specific provision to this effect." *Paccia, supra* at 6. The Legislature responded by enacting St. 1961, c. 347, extending the reach of c. 90, § 24 (1) (*a*) (1), to "any place to which members of the public have access as invitees or licensees." See identical language in G. L. c. 90, § 24 (2) (*a*), as appearing in St. 1964, c. 200, § 3. General Laws c. 90, § 24G, inserted by St. 1976, c. 227, incorporating the same phrase, provided "a middle ground between the felony of manslaughter and the misdemeanor of driving so as to endanger." *Commonwealth* v. *Jones*, 382 Mass. 387, 390-391 (1981).

The Commonwealth asserts that the "sand pits" is property to which the public had access as "licensees" as this court has construed that term in the tort context. In support of this contention, the Commonwealth cites cases in which we have referred to a tort plaintiff as a licensee when he was on property with the "passive acquiescence" or "tacit acquiescence" of the owner. See *Mounsey* v. *Ellard, supra* at 697 (discussing *Sweeny* v. *Old Colony & Newport R.R.*, 10 Allen 368 [1865]); *Donovan* v. *Vennik*, 345 Mass. 769, 770 (1963); *Prondecka* v. *Turners Falls Power & Elec. Co.*, 238 Mass. 239, 241 (1921), *S.C.*, 241 Mass. 100 (1922). The Commonwealth argues that, based on the judge's findings, the public's recreational use of the "sand pits" property was with the "passive acquiescence" of the owners.

Based on the facts reported by the judge, we are not persuaded that the "sand pits" is property to which the public had

access as licensees within the meaning of the statutes under discussion. Although the judge found that the owners of the property took no affirmative steps to exclude the public from their lots, and that there were no barriers preventing access to the property, he also found that the public use of the property "was without the permission of the owners"; that the property had been posted with "No Trespassing" signs (which were vandalized over the years); and that the owners had notified the local police, who said that they would patrol the area.

In light of these findings, it is more reasonable to conclude for the purposes of this criminal case that members of the public had access to the property only as trespassers, who enter land "without a privilege to do so, created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965). *Gage* v. *Westfield*, 26 Mass. App. Ct. 681, 695 n.8 (1988). *Monterosso* v. *Gaudette*, 8 Mass. App. Ct. 93, 99-100 (1979). Mere failure to object is not necessarily the consent or permission needed to transform a trespass into presence by license. See Restatement (Second) of Torts § 330 comment c (1965). In reaching this conclusion, we note that "[t]he precise dividing line between a trespasser and a nontrespasser for common law tort liability purposes has not been defined in Massachusetts." *Gage, supra* at 695 n.8. Such a distinction is, in many cases, including this one, difficult to make. See *Mounsey* v. *Ellard, supra* at 717-718 (Kaplan, J., concurring).

However, our conclusion is consistent with the decision reached by at least one other court that has had occasion to consider, on similar facts, the distinction between trespassers and licensees for tort purposes. See *Bonney* v. *Canadian Nat'l Ry.*, 613 F. Supp. 997, 1000-1002 (D. Me. 1985) (where railway bridge had long history of public use which the railway knew about and tolerated and did nothing effective to prevent, and "no trespassing" signs had been removed or vandalized, a person injured in a fall from the bridge was a trespasser), rev'd on other grounds, 800 F.2d 274 (1st Cir. 1986). Our conclusion also is consistent with G. L. c. 266, § 121A (1986 ed.), under which members of the public who frequented the "sand pits" could have been subject to prosecution for trespass

by motor vehicles or other powered devices "whether or not such land be posted against trespass."

Moreover, it is far from clear that the Legislature contemplated the application of § 24G (*b*) and § 24 (2) (*a*) to a situation like the instant one. The *Paccia* case, which first prompted the Legislature to apply a motor vehicle law to a "place to which members of the public have access as invitees or licensees," involved intoxicated driving on a paved, privately owned roadway used by the public for access between two public ways. *Id.* at 5. There is reason to believe that the same language was added to G. L. c. 90, § 24 (2) (*a*), in order to address the problem of accidents in places "such as public parking lots or chain store parking lots." See letter of Deputy Registrar of Motor Vehicles E. Theodore Gunaris to Governor Endicott Peabody, March 18, 1964, included in the legislative package for St. 1964, c. 200, on file at the Massachusetts Archives. There is no indication in the legislative history that the inclusion of this language in § 24G (*b*), was intended to have any different effect.

Also, we must be "mindful of the principle that criminal statutes must be construed strictly against the Commonwealth." *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984). We conclude that the "sand pits" property on which the offenses occurred was not a "place to which the public has a right of access or . . . any place to which members of the public have access as invitees or licensees." Accordingly, we answer the reported question, "No."

In answering this question, we have referred to the facts as the judge reported them to us. We do not interpret the question, as does the Commonwealth, as a request for a determination whether the evidence introduced at trial was sufficient to convict the defendant of motor vehicle homicide or leaving the scene of a collision after causing personal injury.[2]

---

[2] Nor are we concerned with whether the evidence would have warranted a finding of manslaughter as defined at common law since the defendant was not charged with that crime. *Commonwealth* v. *Welansky*, 316 Mass. 383, 396-401 (1944).

We agree with both parties that the answer to the second question is immaterial in the context of G. L. c. 90, § 24G (*b*) and § 24 (2) (*a*). See *Commonwealth* v. *Hart, supra* at 237-238 ("It is the status of the way, not the status of the driver, which the statute defines"). Therefore, we decline to answer it.

*Judgments reversed.*

*Findings set aside.*