NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-1499                                          Appeals Court

COMMONWEALTH vs. KOSTANTINOS TSONIS.

No. 18-P-1499.

Barnstable.      June 7, 2019. - October 8, 2019.

Present: Hanlon, Ditkoff, & McDonough, JJ.

Motor Vehicle, Operating under the influence, Operating to
    endanger. Way, Public: what constitutes. Practice,
    Criminal, Required finding.

Complaint received and sworn to in the Falmouth Division of
the District Court Department on August 3, 2017.

The case was heard by J. Thomas Kirkman, J.

James R. McMahon, III, for the defendant.
Laura Marshard, Assistant District Attorney, for the
Commonwealth.

DITKOFF, J. The defendant, Konstantinos Tsonis, appeals

after a jury-waived trial from his District Court convictions of

operating under the influence of intoxicating liquor, G. L.

c. 90, § 24 (1) (a) (1), and negligent operation of a motor

vehicle, G. L. c. 90, § 24 (2) (a). We conclude that a parking

lot that members of the public may use to visit a restaurant, bar, shop, and beach, all open to the public, is a public way or place.  Further concluding that evidence of the defendant's physical characteristics, belligerent behavior, and erratic driving was sufficient to show the defendant's impairment and negligent operation, we affirm.

1.  Background.  a.  The resort.  The Sea Crest Beach Hotel is a resort in North Falmouth consisting of nine buildings, including a hotel, a restaurant, a bar, a retail shop, and a public beach.  The restaurant, bar, shop, and beach are open to the public.

The resort has one entrance and one exit and is accessible only by Quaker Road, a public way.  To access the parking lot, drivers must pass by a gatehouse with a sign that says, "GUEST CHECK IN."  Those not checking into the hotel are routinely permitted to drive by the gatehouse without stopping and park in the parking lot.  The gatehouse has an attendant primarily on the weekends and only during the day.

Occasionally, when the resort is busy, parking is restricted to hotel guests and beach club members.[1]  At these times, the hotel puts out a sign reading, "Parking For

---

[1] Hotel guests are given window tags to demonstrate their right to park at all times.  Restaurant and bar patrons are not given window tags.

Registered Hotel Guests and Beach Club Members Only."  This sign, however, is never left out at night.  "The only time [the resort] ha[s] a parking issue is during daylight hours when people want to go to the beach."

b.  The incident.  On August 3, 2017, in the early hours of the morning, an employee of the resort saw a truck slowly moving in the resort parking lot.  The employee, who was in charge of managing the parking lot, approached the truck and asked the driver, through the open driver's side window, if he needed assistance.  The employee observed that the defendant, the driver of the truck, did not respond but had a glazed look on his face and appeared aggressive.  The defendant then drove away, driving over a curb.  The employee was concerned that the truck was disturbing guests because it was extremely noisy and appeared to be shining its high beam lights into one of the hotel buildings where guests were staying.  The employee also expressed concern for the safety of the guests.

The defendant continued to drive around the parking lot at a very slow speed.  The employee attempted to speak to the defendant again.  This time, the defendant stopped the truck, threw open the door to the truck, and "lunged" towards the employee with "clenched fists," screaming and making incoherent threats.  The employee retreated to the hotel lobby and called the police.  The employee observed that the defendant continued

to drive around the parking lot while he was inside the building calling the police.

When a police officer arrived, the defendant was still driving around the parking lot. The defendant drove over marked parking spots and nearly struck parked vehicles. The officer turned on his emergency blue lights to stop the vehicle. When the officer approached the driver's side of the car on foot, the defendant, through the open driver's side window, said, "Really?" When the officer requested the defendant's license and registration and asked what the defendant was doing there, the defendant continued to repeat, "Really? Really?"

When the officer asked the defendant to step out of the vehicle, the officer noticed that the defendant had difficulty doing so. The defendant appeared to be unsteady on his feet and struggled to maintain his balance once he was out of the truck. The officer observed that he was swaying back and forth while speaking. The officer smelled an odor of alcohol emanating from the defendant and noticed that his eyes were glassy and bloodshot. The defendant denied having consumed alcohol that night. When the officer asked the defendant questions, such as "[W]here are you coming from?" and "[W]hat are you doing here?" the defendant continued to repeat, "Really?" The defendant told the officer that he was not a guest at the hotel but did not

explain why he was there. The officer observed that the defendant's speech was slurred.

The officer arrested the defendant and placed him in his cruiser. The officer transported the defendant to the Falmouth Police station and helped the defendant out of the cruiser, observing that the defendant was struggling to get out of the vehicle. Once the defendant was in the booking room, the transporting officer held onto him, and he leaned on the officer for balance. During booking, the defendant stated that he believed that he was at the Bourne Police station, where he said his sister worked. The defendant continued to sway back and forth and lean on the officer for balance throughout the booking process.

After a jury-waived trial, a District Court judge convicted the defendant of operating under the influence of intoxicating liquor and of negligent operation. This appeal followed.

2. Standard of review. "[W]e consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295,

303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

3. Sufficiency of public way or place evidence. To prove either the crime of operating under the influence or negligent operation, the Commonwealth must prove that the defendant operated a motor vehicle upon a public way or place. See Commonwealth v. Ross, 92 Mass. App. Ct. 377, 379 (2017); Commonwealth v. Belliveau, 76 Mass. App. Ct. 830, 832 (2010). A public way or place is defined as "any way or . . . any place to which the public has a right of access, or . . . any place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24 (1) (a) (1). G. L. c. 90, § (24) (2) (a).[2] We have repeatedly held that "[w]hether a particular way is accessible to the public as invitees or licensees, within the meaning of the statute, is a legal conclusion, which we consider independently." Commonwealth v. Virgilio, 79 Mass. App. Ct. 570, 573 (2011). Accord Commonwealth v. Stoddard, 74 Mass. App. Ct. 179, 182 (2009); Commonwealth v. Smithson, 41 Mass. App. Ct. 545, 549 (1996). Of course, it is for the trier of fact to determine the facts, but it is our role to determine whether the facts, viewed in the light most favorable to the Commonwealth, sufficiently support a

_____

[2] Although this element is usually referred to as "public way," a "public place" also suffices under the statute.

finding that the defendant was operating a vehicle on a way or place accessible to the public as invitees or licenses.  See Commonwealth v. Brown, 51 Mass. App. Ct. 702, 709 (2001) (Brown) ("Whether the Commonwealth has proved, beyond a reasonable doubt, that the defendant's impaired operation occurred on a [public way or place] . . . constitutes a legal conclusion rather than a factual finding").

Here, the facts viewed in the light most favorable to the Commonwealth established a public place, because members of the public were permitted to access the parking lot.  The evidence established that members of the public who were not staying at the hotel were permitted to use the parking lot to visit the restaurant, bar, shop, or beach.  At the time of the incident, the restaurant and bar were opened to the public.  Cf. Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 35 (2007) (defendant convicted of negligent operation for driving in shopping center parking lot).

The existence of a gatehouse does not negate the public nature of the parking lot.  The gatehouse was unattended at the time of the incident, but even an attended gatehouse would not make a parking lot nonpublic where, as here, members of the public are routinely permitted to drive by the gatehouse and park in the parking lot.

At the time of the incident, the signs restricting parking to hotel guests and beach club members were not on display. At night, the availability of parking was not an issue and thus there were no restrictions. In any event, the defendant's focus on parking is misplaced. A public place is not a place the public is allowed to park, but rather a place that the public is allowed to travel. So long as the public is allowed to access the place, even merely to drop off a passenger, it is a public place.

We are guided by Brown. There, we determined that the roadways through the grounds of an air force base located on the Massachusetts Military Reservation were public ways because "a considerable number of persons [were] authorized to, and routinely [did]," travel on the roadways. Brown, 51 Mass. App. Ct. at 712. Such travelers included military personnel and their families, visitors to a national cemetery located on the property, attendees and staff of a public school located on the reservation, and those using a little league field located there. See id. at 707, 711. Indeed, in Brown, the unattended gatehouses at the entrance to the air force base had signs indicating that the area was restricted to "authorized personnel only." Id. at 709. We determined that the roads in the air force base remained public ways because a considerable number of persons were authorized to travel on the roads. See id. at 712.

Contrast Commonwealth v. Callahan, 405 Mass. 200, 204 (1989) (area not public way because no member of public had permission to use property and had access to property only as trespasser).

As in Brown, the parking lot of the Sea Crest Hotel was similarly accessible to members of the public wishing to use the parking lot to visit the restaurant, bar, shop, or beach.  No restrictive signage indicated that the property was closed to the public at the time of the incident.  Moreover, the signs placed during the day on busy weekends restricted only parking, not access.  Accordingly, the trial judge heard sufficient evidence to reasonably conclude that the parking lot in which the defendant drove was a public place.

4.  Sufficiency of impairment evidence.  "[T]he phrase 'under the influence' refers to impairment, to any degree, of an individual's ability to safely perform the activity in question."  Commonwealth v. Veronneau, 90 Mass. App. Ct. 477, 479 (2016).  Here, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to prove that the defendant was under the influence of alcohol while driving.  The defendant exhibited physical signs of intoxication and behaved erratically.  The employee observed the defendant's driving slowly around the parking lot in a suspicious manner.  When the employee confronted the defendant, he observed that the defendant had a glazed look on his face and

appeared aggressive. The defendant lunged towards the employee with clenched fists, screaming and making incoherent threats. See Commonwealth v. Jewett, 471 Mass. 624, 636 (2015) (defendant's belligerent behavior such as fighting with police officer was evidence of intoxication).

When a police officer arrived, he observed the defendant driving around the parking lot, over marked parking rows, and nearly striking a couple of parked vehicles. The defendant was unresponsive to the police officer's questions and "kept repeating, 'Really? Really?'" The officer observed that the defendant's eyes were glassy and bloodshot and smelled an odor of alcohol emanating from the defendant. See Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 350 (2015) (officers' observations that defendant's eyes were glassy and bloodshot and that defendant had strong odor of alcohol was evidence of impairment). Moreover, the defendant appeared to be unsteady on his feet and struggled to maintain his balance. At various times during the booking process, the defendant was swaying and held onto the officer for balance. See Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 506-507 (2011) (defendant's "slurred speech, belligerent demeanor, strong odor of alcohol, poor balance, and glassy, bloodshot eyes" were all evidence of intoxication). This evidence was sufficient to permit the trier

of fact to find that the defendant was impaired. See Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392 (2017).

5. Sufficiency of negligent operation evidence. To prove negligent operation, "the Commonwealth must prove that the defendant (1) operated a motor vehicle (2) upon a public way (3) negligently so that the lives or safety of the public might be endangered." Ross, 92 Mass. App. Ct. at 379. See Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 921 (2004). "The statute requires proof that the defendant's conduct might have endangered the safety of the public, not that it, in fact, did." Commonwealth v. Teixeira, 95 Mass. App. Ct. 367, 369 (2019). Accordingly, negligent operation can be found "despite the absence of a collision, near collision, or injury." Ross, supra at 379-380. See Ferreira, 70 Mass. App. Ct. at 33-35.

Here, the defendant's erratic driving and near collision with parked vehicles was sufficient evidence for the trier of fact to find that the lives or safety of the public might be endangered. See Commonwealth v. Daley, 66 Mass. App. Ct. 254, 256 (2006) (driving over fog line multiple times, straddling breakdown lane, and narrowly missing hitting road work sign was evidence of negligent operation). The defendant travelled slowly around the parking lot and drove over a curb, and a police officer observed the defendant nearly hitting other parked cars. The defendant was also unable to comply with the

police officer's orders to produce his license and registration and failed to respond to the officer's questions about why he was in the parking lot. See Commonwealth v. Sousa, 88 Mass. App. Ct. 47, 51 (2015) (sufficient evidence that defendant's conduct might have endangered public where defendant's vehicle rolled through stop sign, abruptly stopped and started, and defendant appeared asleep behind wheel and did not comply with police officer's commands). And, of course, the defendant appeared to be intoxicated. See Ross, 92 Mass. App. Ct. at 380. This is not a case where the Commonwealth relied upon only the defendant's intoxication and a nonworking headlight or other minor equipment issue to prove negligent operation. See Commonwealth v. Zagwyn, 482 Mass. 1020, 1021-1022 (2019). Accordingly, there was sufficient evidence for the trier of fact to find that the defendant operated his vehicle negligently so that the lives or safety of the public might be endangered. For the foregoing reasons, the judgments are affirmed.

So ordered.