## COMMONWEALTH vs. GREGORY BELLIVEAU.

No. 09-P-467.

Suffolk. February 3, 2010. - June 1, 2010.

Present: KAFKER, VUONO, & SIKORA, JJ.

*Motor Vehicle,* Operating under the influence. *Way,* Public: what constitutes. *Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Sentence.

At the trial of an indictment charging the defendant with operating a motor vehicle while under the influence of alcohol, in violation of G. L. c. 90, § 24(1)(a)(1), the evidence and the judge's instructions permitted the jury to find that the defendant did so on a way or in a place to which the public has a right of access, where the defendant, who was observed obviously intoxicated and urinating in public immediately after driving onto a pier, not only drove under the influence of alcohol on the pier (the status of which as a public way was a close question) but also on the public roads that provided the only access to the pier. [832-835] SIKORA, J., concurring.

A criminal defendant charged with operating a motor vehicle while under the influence of alcohol, in violation of G. L. c. 90, § 24(1)(a)(1), failed to demonstrate that his trial counsel's alleged errors deprived the defendant of an otherwise available, substantial ground of defense, given the overwhelming evidence of the defendant's intoxication. [836]

There was no merit to a criminal defendant's argument that the trial judge considered improper factors during sentencing. [836]

INDICTMENT found and returned in the Superior Court Department on December 20, 2004.

The case was tried before *Margaret R. Hinkle,* J.

*Sharon Dehmand* for the defendant.

*Nick Kaiser* (*Kris C. Foster,* Assistant District Attorney, with him) for the Commonwealth.

KAFKER, J. Observed obviously intoxicated and urinating in public immediately after driving onto a pier in the Charlestown section of Boston, the defendant, Gregory Belliveau, was convicted of operating a motor vehicle while under the influence of alcohol (OUI), fifth offense, in violation of G. L. c. 90, § 24(1)(a)(1), as amended through St. 2003, c. 28, §§ 1, 2.

On appeal, he argues that the pier on which he was arrested was not a public way under the statute, that he received ineffective assistance of counsel, and that the judge considered improper factors in sentencing the defendant. We affirm.

1. *Facts.* The jury were warranted in finding the following facts. Pier 4 is located in the Charlestown Navy yard. The pier is surrounded on all sides by water and is accessible by automobile only by way of public streets.[1] Those streets end at Terry Ring Way. As described by a police officer, "Off of Terry Ring way, there is a short paved area that cars can go down and stop about fifty yards down." Entry to the pier is then through a swinging gate. Next to the gate was a small, somewhat washed-out sign. According to the Commonwealth witnesses, signage to the pier stated that only authorized vehicles were allowed on the pier. The pier was paved and had streetlights.

At about 5:30 P.M. on May 19, 2004, Steven Spinetto, a city of Boston employee, was arriving on the Massachusetts Bay Transportation Authority (MBTA) commuter ferry to a drop-off location adjacent to Pier 4.[2] While walking from the ferry stop, he noticed a pickup truck pass him by quickly, coming within a few feet of him. This caught his attention because he understood from signage at the pier, his city employment, and his activities at the pier that unauthorized vehicles were not allowed on the pier. The vehicles he had seen on the pier were "usually the director's vehicle or vehicles involved with staffing or operations of the sailing center." A police officer also testified that "[t]he section that [the] defendant's car was on would had to have gone across the wooden boards into the section down on the pier; there's no motor vehicles at all, it's a pedestrian pier," and subsequently added that "[t]he public can be there, sir, yes.

---

[1]Photographs of the pier, maps, and plans were introduced in evidence, as well as detailed testimony explaining the exhibits.

[2]The defendant testified that after leaving work at 4:00 P.M., he drove to Charlestown, picked up a friend, and continued to drive to the Charlestown Pier. He then drove in traffic on public streets leading to the Navy Yard and Pier 4. As he approached the pier, he had to "race up and pass" one car. He then drove up Terry Ring Way to a closed double swinging gate. As the defendant moved for a required finding of not guilty at the close of the Commonwealth's case on the public way question, we do not consider the defendant's testimony in determining whether that motion should have been allowed.

Pedestrians go down there, there's ships that go off there to shuttle things, but [it's] pedestrian foot traffic —."

Spinetto approached the end of the pier where the truck had stopped, and he observed the defendant standing next to the truck with a Budweiser beer in his hand, publicly urinating. He noticed that the defendant was "pretty unsteady on his feet," slurring his words, and blurry-eyed, and that he smelled of alcohol. Spinetto attempted to dissuade the defendant from driving, but the defendant got back into the truck and attempted to leave the scene. With the assistance of another witness, Steven Estes-Smargiassi, Spinetto prevented the defendant from leaving by opening and closing the truck's doors and by closing the gates to the pier. Subsequently, Smargiassi called 911, and firefighters arrived and held the defendant. Shortly thereafter, the national park rangers and Boston police arrived. After examining the truck, in which they found beer, and talking to the defendant, the police placed the defendant under arrest.

2. *Public way.* In order to sustain an OUI conviction, the Commonwealth must prove that the offense took place "upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1). "Way" is further defined by statute to include "any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park commissioners or body having like powers." G. L. c. 90, § 1. This element has been further interpreted by the Supreme Judicial Court to require that the "public have a right of access by motor vehicle or access as invitees or licensees by motor vehicle." See *Commonwealth* v. *George*, 406 Mass. 635, 637 (1990), citing *Commonwealth* v. *Endicott*, 17 Mass. App. Ct. 1025, 1026 (1984) (Brown J., concurring).

Moreover, "it is the objective appearance of the way that is determinative of its status, rather than the subjective intent of the property owner." *Commonwealth* v. *Kiss*, 59 Mass. App. Ct. 247, 249-250 (2003). See *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. 545, 549 (1996). In making that determination, we look to see if the "physical circumstances of the way are such that members of the public may reasonably conclude that it is

open for travel . . . ." *Commonwealth* v. *Hart*, 26 Mass. App. Ct. 235, 238 (1988). *Commonwealth* v. *Kiss*, 59 Mass. App. Ct. at 250. "Some of the usual indicia of accessibility to the public include paving, curbing, traffic signals, street lights, and abutting houses or businesses." *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. at 549-550. See *Commonwealth* v. *Stoddard*, 74 Mass. App. Ct. 179, 182 (2009); *Commonwealth* v. *Colby*, 23 Mass. App. Ct. 1008, 1010 (1987) (marked traffic lanes and hydrants indicia of public accessibility). Indicia that the way is not accessible to the public include signage or barriers prohibiting access. See *Commonwealth* v. *George*, 406 Mass. at 639 (barriers and sign saying, "[N]o cars beyond this point"); *Commonwealth* v. *Stoddard*, 74 Mass. App. Ct. at 183 ("presence of a gate severely restricting general access to the campground is of great significance"). Deeds are also relevant considerations. See *Commonwealth* v. *Hazelton*, 11 Mass. App. Ct. 899, 900 (1980).

The focal point of the case was whether Pier 4 was a public way. To that end, the Commonwealth introduced evidence that there is an MBTA ferry stop on the pier, photographs showing indicia of accessibility including a paved passageway and streetlamps, a deed containing a covenant for the property "to provide access and egress to the general public foot *or vehicle*" (emphasis supplied), testimony that "[t]here were a variety of people, kids, and other people out on the pier as there are almost every evening," and testimony regarding the presence on the pier of the Courageous Sailing Center, "a nonprofit organization that provides sailing opportunities to the youth of Boston," which apparently was running sailing competitions on the day the defendant was apprehended.

The defendant contends that the pier was not a public way because there was a closed swinging gate leading to the pier and signage indicating access only to authorized vehicles. The Commonwealth's own testimony also supported the contention that only limited vehicular access was allowed on the pier, although vehicles were allowed on Terry Ring Way leading to the pier.

In sum, the status of the pier as a public way is a close question. There was ample evidence that the pier was public and a way

and paved and lit in a manner suitable for vehicular traffic. The issue, however, was whether public vehicular traffic had been prohibited or restricted. As the Supreme Judicial Court stated in *Commonwealth* v. *George*, 406 Mass. at 638, a case in which the defendant was arrested while drinking and driving on a school baseball field, "our prior cases assume, without discussion, that the term 'access,' as it appears in § 24, requires inquiry whether the public has access, *by a motor vehicle*, to a particular way or place" (emphasis original).[3] The court in *George* reversed the conviction because the drinking and driving occurred on the baseball field, which did not provide vehicular access to the public.[4]

In the instant case, the presence of a gate and signage are strong indicators that restrictions on public vehicular access were in place. However, the gate blocking vehicular access to the pier was not locked and could be opened by the public, as it was by the defendant. Compare *Commonwealth* v. *Stoddard*, 74 Mass. App. Ct. at 180 (gate card access required). Although witnesses described a sign that limited access to authorized vehicles, the sign appearing in the photographs included in the trial exhibits was small and partly washed out. See *Commonwealth* v. *Hart*, 26 Mass. App. Ct. at 236-238 (public way found despite presence of "a sign [a little bigger than a standard no parking sign which also adorned the pole] that read: 'Private Property/Chomerics Employees and Authorized Persons Only' "). Compare *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. at 550-551 (no public way where a sign listing business hours was "clearly visible from the road as one approache[d] the entrance" and physical circumstances did not suggest a public way). The deed also expressly provided for vehicular access to the public. The presence of a public water shuttle dock and a sailing center open to Boston youth also suggested that some parking

---

[3]In *Commonwealth* v. *George*, "the parties [had also] agreed and the jurors were instructed that the baseball field was not, as a matter of law, a public way." *Id.* at 636.

[4]The evidence in *Commonwealth* v. *George*, *supra* at 637-638, indicated that the defendant consumed alcohol on the field and overturned the car while trying to leave the field. In the instant case, in contrast, the evidence and the reasonable inferences that could be drawn therefrom indicated that the defendant was driving under the influence on public roads prior to his arrival at the pier.

for the public using those facilities could reasonably be expected nearby, at least in the absence of signage to the contrary.

We need not, however, resolve this close question because it was obvious that the defendant was driving under the influence of alcohol not only on the pier, but also on the public roads leading to the pier.[5] As established by the photographs, maps, and plans introduced in evidence, as well as supporting testimony, there was no other way to get to the pier by automobile except by the public roads connecting to the pier. The defendant was also observed driving quickly, close to the entrance of the pier, thereby allowing a reasonable inference that he, and not his passenger, was driving the pickup to the pier.[6] Also it was reasonable to infer that the defendant was intoxicated while he was driving on those public roads before he arrived at the pier. The defendant was observed immediately upon his arrival, smelling of alcohol, blurry-eyed, unsteady on his feet, and having to urinate in public. Proof of operating under the influence on a public way may "rest entirely on circumstantial evidence." *Commonwealth* v. *Petersen*, 67 Mass. App. Ct. 49, 52 (2006) (citation omitted). See *Commonwealth* v. *Wood*, 261 Mass. 458 (1927); *Commonwealth* v. *Colby*, 23 Mass. App. Ct. at 1011. Here there was sufficient circumstantial evidence to provide the necessary proof of all three elements of the offense: the public way, the driving, and the impairment.

Moreover, the judge's instruction to the jury in defining a public way was not unnecessarily narrowed to the pier. Rather her detailed instructions on public ways appropriately included the following: "Any street or highway that is open to the public and is controlled and maintained by some level of government is what we call a public way. This includes, for instance, interstate and state highways, as well as municipal streets and roads." Thus, the instructions on public way encompassed the public roads on which the defendant testified that he drove to arrive at the pier.

---

[5]We recognize that the Commonwealth ignored this obvious alternative in arguing its case to the jury. Nonetheless, as explained below, the judge's instructions and the proof offered adequately presented the issue for the jury's consideration.

[6]The passenger left the car soon after they were confronted at the pier.

3. *Remaining issues.* We need not belabor the remaining issues. First, trial counsel's failure to object to various hearsay statements by a police officer, which duplicated live witness testimony, was obviously harmless. Next, given the testimony regarding how unsteady the defendant was on his feet, we cannot say on this record that trial counsel's informed and strategic decision to elicit from the defendant that he had sustained a knee injury, and that was why he refused to take a field sobriety test, was manifestly unreasonable.[7] Regardless, given the overwhelming evidence of his intoxication, it certainly did not "deprive[] the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

Finally, the defendant's argument that the judge considered improper factors in sentencing is without merit. The defendant contends that Spinetto should not have been given the opportunity to give "a community impact statement," speaking about his loss of limb after being run over by a drunk driver over thirty years prior, and making a plea for the judge to keep the defendant from injuring other people. Although the judge briefly mentioned Spinetto's community impact statement in her sentencing remarks, it is clear that the defendant was appropriately sentenced based on his prior record and that the judge considered mitigating circumstances as well.[8] Further, the sentence was within the statutory limits. Thus, noting that there was no objection below, we conclude that there was no substantial risk of a miscarriage of justice.

*Judgment affirmed.*

SIKORA, J. (concurring). I concur fully in the specific rationale of the affirmance: that the evidence and the judge's proper instructions permitted the jury to find that the defendant had

---

[7] The Commonwealth chose not to inquire about the field sobriety test on cross-examination.

[8] The judge explained that "having weighed the statutory language, having weighed the facts of the offense, and this defendant's prior record, having considered the mitigating information and the letters submitted by his wife, his mother, and his sister, having paid heed to the recommendations of the prosecutor in the case and the recommendations of the defense attorney, I believe that this is an appropriate sentence taking into consideration all of those factors."

driven under the influence of alcohol on the public roads lead-
ing to the pier. *Ante* at 835. That analysis freed us from the need
to resolve the "close question" whether the pier constituted
"any way or . . . any place to which the public has a right of
access, or . . . any way or . . . any place to which members of
the public have access as invitees or licensees . . . ." G. L.
c. 90, § 24(1)(*a*)(1), as amended through St. 2003, c. 28, § 1.
The "close question" results from a line of precedent restrictively
construing the statutory terms "way" and "place." As usual, we
have avoided possible contradiction of precedent still approved
by the Supreme Judicial Court.[1] At the same time, I believe that
the evidence of this case exposes a deficiency in the current
statutory construction and the need for examination of the under-
lying case law.[2]

*Significant facts.* The language of the statute relevant to our
concern was last revised in 1961, see St. 1961, c. 347, to provide
the following:

> "Whoever, upon any way or in any place to which the
> public has a right of access, or upon any way or in any
> place to which members of the public have access as invi-
> tees or licensees, operates a motor vehicle . . . while

[1]From its inception the Appeals Court has renounced any authority to alter,
overrule, or decline to follow governing precedents of the Supreme Judicial
Court. *Burke* v. *Toothaker*, 1 Mass. App. Ct. 234, 239 (1973). *Commonwealth*
v. *Healy*, 26 Mass. App. Ct. 990, 991 (1988). *Commonwealth* v. *Dube*, 59
Mass. App. Ct. 476, 485-486 (2003), and cases cited. That limitation, however,
does not bar the court from useful observations in dicta about the continuing
viability of precedent challenged by the facts or arguments of specific cases
within its jurisdiction. See, e.g., *Holmes Realty Trust* v. *Granite City Storage
Co.*, 25 Mass. App. Ct. 272, 277-278 & n.2 (1988), questioning the then exist-
ing rule imposing a duty to pay rent upon a nonresidential tenant independently
of the landlord's breach of covenants in the lease; and the subsequent decision
of the Supreme Judicial Court overruling that doctrine, *Wesson* v. *Leone
Enterprises, Inc.*, 437 Mass. 708, 709 (2002). Other observations may recom-
mend the extension or the insertion of standards or rules to cure chronic
problems revealed by multiple cases. See, e.g., *Commonwealth* v. *DiGiambat-
tista*, 59 Mass. App. Ct. 190, 196 n.4 (2003), suggesting the utility of videotaping
or audiotaping admissions or confessions resulting from police interrogation,
and the subsequent adoption of that view by the Supreme Judicial Court, *S.C.*,
442 Mass. 423, 440-449 (2004).

[2]As discussed below, the Supreme Judicial Court, in its last treatment of the
issue twenty years ago, observed that the restrictive interpretation had evolved
"without discussion." *Commonwealth* v. *George*, 406 Mass. 635, 638 (1990).

under the influence of intoxicating liquor . . . shall be punished . . . ."[3]

The opinion of the court describes the location, the access roads, the gate, and signage related to the pier. *Ante* at 833-835. Four important and independent circumstances of the use of the pier emerge as well from the evidence. A commuter ferry service conducted by the Massachusetts Bay Transportation Authority delivered passengers to a terminal at the edge of the pier from which they could walk across it. An instructional sailing club conducted a program for children from the pier; their parents and friends would observe their races from it. The pier contained benches on which pedestrian visitors could rest. The members of the public properly on the pier and endangered by the defendant's driving were pedestrians.

Additionally, the evidence permitted the jury to make the following findings about the defendant's conduct. He drove his pickup truck at a high speed onto the pier; got out and urinated onto one of the benches; reentered the truck and backed into another bench; and then backed up further so as to collide with a storage shed used by the sailing club. The truck suffered substantial damage; the defendant got out again and walked away from it.

*Major case law.* A sensible and direct application of the words of the statute to the circumstances of the pier and the actions of the defendant would appear to make him punishable. However, the interpretative overlay of the following cases has required that the "way" or "place" in question be one of public "access" by "motor vehicle." *Commonwealth* v. *George*, 406 Mass. 635, 638 (1990). That construction forces us, somewhat anomalously, to affirm the conviction of the defendant, not on the basis of his extraordinary conduct on the pier, but rather on the basis of his inferable driving down separate roadways.

The original act punished simply operation under the influence "on any public way or private way laid out under authority of law." St. 1906, c. 412, § 4. It made no reference to opera-

---

[3]In parts immaterial, this sentence was also amended in 1994, see G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1994, c. 25, § 3, and by St. 2003, c. 28, § 1.

tion in a "place." Early decisions dealing with operation on a "way" stated that "[t]he statute was passed for the protection of travellers on highways," and therefore presumably persons in motor vehicles. See *Commonwealth* v. *Clarke*, 254 Mass. 566, 567-568 (1926) (movement of car for several feet by mere shifting of gear and without engagement of the engine by the driver amounted to operation; the statute "was passed for the protection of travellers upon highways"); *Commonwealth* v. *Clancy*, 261 Mass. 345, 348 (1927) (the statute "was intended to regulate the use of motor vehicles upon ways").

In 1928, the Legislature rewrote the entire provision. Its opening main clause now declared, "Whoever upon any way, *or in any place* to which the public has a right of access, operates a motor vehicle . . . while under the influence of intoxicating liquor . . . shall be punished . . ." (emphasis supplied). G. L. c. 90, § 24, as appearing in St. 1928, c. 281. Thus the notion of statutory protection for highway travelers or motorists took hold in the version of the act predating any reference to operation in a "place." Subsequent decisions seem never to have caught up with the 1928 addition of the concept of a "place" as the site of operating under the influence.

Despite the added term, the court in *Commonwealth* v. *Paccia*, 338 Mass. 4, 6 (1958), concluded that operation under the influence on a private way connecting two public ways was not operation upon the requisite "place to which the public ha[d] a right of access" because no general public easement existed over it, even though the owner of the private way had permitted use of it by members of the public as business invitees or business licensees to a nearby restaurant and a market building. The court reasoned that the canon of strict construction of penal statutes required an explicit legislative statement expanding the place of public access to private sites receiving members of the public as business invitees or licensees. *Ibid.*

Three years later the Legislature responded with the additional words "as invitees or licensees." St. 1961, c. 347. In one subsequent case, *Commonwealth* v. *Connolly*, 394 Mass. 169, 172 (1985) (an appeal hinging on the meaning of "under the influence"), the court in dicta repeated the language of the 1926 *Clarke* case (the purpose of the statute was "the protection of

travellers upon highways"). In another it determined that the defendant's operation of his pickup truck on a privately owned parcel of land onto which persons would drive various recreational vehicles such as "go carts" without the owner's permission did not involve a "place to which the members of the public [have] access as invitees or licensees" because the owner had never consented to such entry. *Commonwealth* v. *Callahan*, 405 Mass. 200, 202-205 (1989). The court acknowledged that the 1961 amendment had "extend[ed] the reach" of the act, *id.* at 203, but added that the canon of strict construction of penal legislation against the Commonwealth applied to its terms. *Id.* at 205. "There is reason to believe that [the 1961 amendment references to invitees and licensees sought] to address the problem of accidents in places 'such as public parking lots or chain store parking lots.' " *Ibid.*

In its last assessment of this portion of the act in 1990, the court held that the center field area of a public school baseball field did not qualify as a public way or place to which the public had access by motor vehicle as of right or as invitees or licensees because both physical barriers and "no trespassing" signs blocked entry onto the field. *Commonwealth* v. *George*, 406 Mass. at 639-640. The court noted that its prior decisions had assumed "without discussion" that the statutory term "access" meant access to a particular way or place by motor vehicle. *Id.* at 638.[4]

*The issue.* None of the cases appears to have addressed the applicability of the statute to places to which members of the public have access as *pedestrian* invitees or licensees. For the

---

[4]In decisions addressing the meaning of a "way" in § 24(1)(*a*)(1), the Appeals Court has consulted the definition of that term by G. L. c. 90, § 1: "any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park commissioners or body having like powers." Beyond that source, as this case illustrates, *ante* at 832-833, we have examined the site where the suspect was driving under "the usual indicia of accessibility to the public [such as] paving, curbing, traffic signals, street lights, and abutting houses or businesses." *Ante* at 833, quoting from *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. 545, 549-550 (1996). Our most extensive discussion of the locus required for conviction of operating under the influence under § 24(1)(*a*)(1) dealt with a way on both sides of which were business abutters and which was indisputably open for travel by motor vehicles. *Commonwealth* v. *Hart*, 26 Mass. App. Ct. at 237-238.

following reasons, a continuation of the unexamined assumption that the term "access" in the impaired driver statute means only public access by a motor vehicle seems to me unwarranted by its language and contradicted by its safety purpose.

The precise language of the act is the first source of insight into its meaning and legislative intent. See, e.g., *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977); *Commissioner of Correction* v. *Superior Court Dept. of the Trial Court*, 446 Mass. 123, 124 (2006). The language extends to impaired operation "upon any way or in any place" accessible to members of the public as invitees or licensees. The repeated use of the article "any" with no limiting adjectives or phrases attached to the words "right of access" and "invitees and licensees" denotes the generality of the intended "place." The Legislature did not confine the roles of invitees or licensees to persons conveyed by motor vehicles. It chose the additional words in 1961 as a specific answer to the narrow interpretation and the invitation of additional language by the then recent *Paccia* decision, 338 Mass. at 6. In 1928 it had previously broadened coverage of the act from a "way" to a "way" and a "place." Its revisions of the statute have progressively expanded its range.

On three occasions the courts have pointed out that the act's penal character requires strict interpretation. See *Commonwealth* v. *Paccia*, 338 Mass. at 6 (rejecting "exten[sion] merely by implication"); *Commonwealth* v. *Connolly*, 394 Mass. at 174 ("[w]e must resolve in favor of criminal defendants any reasonable doubt as to the statute's meaning"); *Commonwealth* v. *Callahan*, 405 Mass. at 205 ("criminal statutes must be construed strictly against the Commonwealth"). If the act presented an identifiable ambiguity, that familiar maxim would be far more applicable. However, as the latest reference in the *George* case, 406 Mass. at 638, points out, the critical assumption of the law's limitation to members of the public as motorists and not as pedestrians has proceeded "without discussion" of any ambiguity. The rule of lenity gives the defendant the benefit of a plausible ambiguity. It "does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one." *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992), quoting from *Commonwealth* v. *Tata*, 28 Mass. App. Ct. 23, 25-26 (1989) (Kaplan, J.).

In these circumstances several other canons of interpretation deserve consideration and application in a discussion of the scope of the act. One is that each substantive word of a statute has separate meaning. See, e.g., *Commonwealth* v. *Millican,* 449 Mass. 298, 300-301 (2007) (construing the felony vehicular homicide statute, G. L. c. 90, § 24G[*a*], against the defendant's contention of redundant language); *Commonwealth* v. *Shea,* 46 Mass. App. Ct. 196, 197 (1999).

Thus the Legislature's addition of the word "place" in 1928 meant something more than a "way." Both the statutory definition of "way," G. L. c. 90, § 1, *supra* at note 4, and the general ordinary meaning depict an artery supporting some degree of traffic or movement. By contrast, a "place" denotes a far more generic location unrestricted to the conveyance of traffic. If a statute does not define a term, we may interpret it "in accordance with its generally accepted plain meaning." *Commonwealth* v. *Boucher,* 438 Mass. 274, 276 (2002), and cases cited. The 1928 addition of the term "place" by the Legislature expanded the diameter of the statute beyond the focus of the early decisions on protection of highway travellers.

Other standards of interpretation forbid courts to add language to the terms chosen by the Legislature. *Commonwealth* v. *McLeod,* 437 Mass. 286, 294 (2002) (a court must "not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design"). See *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge,* 424 Mass. 661, 668 (1997) (Greaney, J., dissenting) (same). Here the current interpretation effectively adds the phrase "by motor vehicle" to the Legislature's words "any place to which the public has a right of access, . . . or . . . any place to which members of the public have access as invitees or licensees." That narrowing addition undercuts the legislative trend to broaden the coverage of the act.

Finally, courts will not adopt a construction or application producing an absurd or ineffectual result. See *Insurance Rating Bd.* v. *Commissioner of Ins.,* 356 Mass. 184, 189 (1969); *Commonwealth* v. *Millican,* 449 Mass. at 303-304. The application of the impaired driver statute for the protection of members of the public as motorists but not as pedestrians produces at least

an irrational result. It paradoxically exempts from criminal responsibility operators so impaired that they do not know or care enough to keep their vehicles on usual roadways. It excludes from the protection of the statute members of the public least expecting, and most vulnerable to, irresponsible driving precisely because they are located off the usual ways of motor traffic. Members of the public engaged in rest or recreation in such places as parks, picnic areas, beaches, restaurant patios, or recreational piers of the kind presented in this case would be located in places of insufficient public access for protection against impaired drivers because they entered them on foot. That interpretation opens a substantial gap in the coverage of the act. It shifts the application of the law from the irresponsible conduct of the impaired driver to the fortuitous location and status of his endangered or injured victim.

*Solutions.* A "place" is a location other than a "way," and a "member of the public" can be a person other than a motorist. The decisions have fallen behind the statute. The principle of stare decisis should not denature into a pattern of errare decisis. Several processes are available to break the momentum of error. Within the executive branch and most immediately, a typical prosecution could include evidence, argument, and instruction upon the operator's use of public roads adjoining the place in which the impaired driving injured or endangered pedestrians, as occurred here. Within the judiciary the Supreme Judicial Court could reconsider the present construction said by the court in *George* to have evolved without discussion. Finally, and perhaps ideally, the Legislature could further amend the statute to extend its reach unmistakably to "any place in which the public has a right of access, or . . . any place to which members of the public have access as invitees or licensees *as motorists or as pedestrians*" (emphasized words supplied).