## Commonwealth *vs.* Lisa Virgilio.

No. 10-P-519.

Worcester. January 11, 2011. - May 24, 2011.

Present: McHugh, Sikora, & Fecteau, JJ.

*Motor Vehicle,* Operating under the influence. *Way,* Public: what constitutes.

At the trial of a criminal complaint charging operating a motor vehicle under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24(1)(*a*)(1), there was insufficient evidence to sustain the defendant's conviction, where the circumstances of the place in question, i.e., a private driveway and parking area that served only two residences containing three dwelling units in total, that neither contained nor led to any business or public accommodation, and that did not give an impression to the general public or members thereof that it was anything other than a private driveway or that public use was invited (notwithstanding that it was neither gated nor posted), foreclosed consideration of it as a matter of law as a way or place to which the public had access as invitees or licensees. [571-575] Sikora, J., dissenting.

COMPLAINT received and sworn to in the Uxbridge Division of the District Court Department on May 18, 2009.

The case was tried before *Thomas F. Sullivan, Jr.,* J.

*Barbara A. Munro* for the defendant.

*Elizabeth A. Sweeney* (*Jane A. Sullivan,* Assistant District Attorney, with her) for the Commonwealth.

Fecteau, J. The defendant appeals from her conviction of operating a motor vehicle under the influence of intoxicating liquor. First she contends that the judge erroneously denied her motion for a required finding of not guilty on the ground that the place on which she was operating the vehicle was not within the reach of G. L. c. 90, § 24(1)(*a*)(1), because it is not a way or place to which members of the public have access as invitees

or licensees.[1] Secondly, she contends that the judge gave her an excessive sentence. As we agree with the defendant's contention that the location where she operated her motor vehicle was not a way or place governed by the statutory language at issue, we reverse her conviction.[2]

*Background.* The essential facts are not in dispute.[3] The defendant resides in a single-family cottage located on Burden Street in Sutton. Next door to her house is a two-story, two-family dwelling, in which resides the owner of the other car involved in this scenario. Between the two houses is a paved driveway that widens and ends in a parking area. Only the occupants of the two houses park in this area.[4] There are no businesses or public services of any kind located along or around the driveway parking area. The driveway is the width of two cars; the parking area at the end is several times wider.

*Discussion.* We examine the evidence introduced at trial in the light most favorable to the Commonwealth and ask whether the evidence was sufficient to warrant a rational trier of fact in concluding beyond a reasonable doubt, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), that the location at which the defendant was found to have been operating her motor vehicle on the evening in question is a "way or . . . place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1994, c. 25, § 3. In our view, the record evidence is not sufficient to

---

[1] The statute makes criminal the operation of a motor vehicle while under the influence of intoxicating liquor (or other specified substances not relevant here) "upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1994, c. 25, § 3.

[2] While we do not disagree with the manner in which our dissenting colleague would dispose of the defendant's second issue (excessive punishment), we need not address the issue given the result we reach.

[3] The defendant does not dispute that (1) on May 16, 2009, she was intoxicated when she got into her car, which had been parked in a parking area between the two residences; and (2) as she backed into the side of her neighbor's car, which was parked in the same area, she "operated" her motor vehicle as required by the statute.

[4] The record does not reveal the location of the boundary between these two properties, but the Commonwealth does not dispute that the driveway is totally within privately owned property.

sustain the denial of the defendant's motion for a required finding of not guilty.

Prior to its amendment by St. 1961, c. 347, G. L. c. 90, § 24(1)(*a*)(1), applied only to operation of a motor vehicle "upon any way or in any place to which the public has a right of access."[5] *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. 545, 552 (1996). "The original version of the statute was 'passed for the protection of travelers upon highways,' and 'was not intended to make criminal the use of a motor vehicle [while intoxicated] in all places within the Commonwealth.' " *Ibid.*, quoting from *Commonwealth* v. *Clarke*, 254 Mass. 566, 568 (1926), and *Commonwealth* v. *Clancy*, 261 Mass. 345, 348 (1927). In *Commonwealth* v. *Paccia*, 338 Mass. 4, 6 (1958), the Supreme Judicial Court construed that language to encompass only public ways or ways in which the general public held an easement, and not private ways used by the public merely as licensees or business invitees. In so holding the court said that "[i]f the Legislature had wished to include areas like [the road at issue], to which members of the public have access only as business invitees or licensees, within the penal prohibitions of § 24, it would have been appropriate for it to have made a clear and specific provision to this effect." *Ibid.* In response, the Legislature amended the statute to add: "any place to which members of the public have access as invitees or licensees." See St. 1961, c. 347; *Commonwealth* v. *Callahan*, 405 Mass. 200, 203 (1989). This additional language has been the subject of several subsequent opinions. See, e.g., *Commonwealth* v. *George*, 406 Mass. 635, 639 (1990); *Commonwealth* v. *Hart*, 26 Mass. App. Ct. 235, 237-238 (1988); *Commonwealth* v. *Muise*, 28 Mass. App. Ct. 964, 965 (1990); *Commonwealth* v. *Smithson*, 41 Mass. App. Ct. at 549; *Commonwealth* v. *Brown*, 51 Mass. App. Ct. 702, 712-713 (2001); *Commonwealth* v. *Kiss*, 59 Mass. App. Ct. 247, 250 (2003); *Commonwealth* v. *Stoddard*, 74 Mass. App. Ct. 179, 181-183 (2009); *Commonwealth* v. *Bel-*

---

[5] Given the nature of the contention and the evidence produced, the other means by which a "way" may be established under the provisions of G. L. c. 90, § 1, are inapplicable ("any public highway, private way laid out under authority of statute, way dedicated to public use, or way under the control of park commissioners or body having like powers").

*liveau,* 76 Mass. App. Ct. 830, 832 (2010); *Commonwealth* v. *Cabral,* 77 Mass. App. Ct. 909, 910 (2010).

In assessing whether a particular private way falls within the statute, "[i]t is the status of the way, not the status of the driver, which the statute defines . . . i.e., it is sufficient if the physical circumstances of the way are such that members of the public may reasonably conclude that it is open for travel to invitees or licensees." *Commonwealth* v. *Hart,* 26 Mass. App. Ct. at 237-238. Accordingly, an individual may be held in violation of the statute even if his presence on the way is without benefit of a specific license or invitation. See *ibid; Commonwealth* v. *Brown,* 51 Mass. App. Ct. at 712-713. Whether a particular way is accessible to the public as invitees or licensees, within the meaning of the statute, is a legal conclusion that we consider independently. See *Commonwealth* v. *Smithson, supra* at 549; *Commonwealth* v. *Brown, supra* at 709-710.

"If the invitation or license is one that extends (or appears, from the character of the way, to extend) to the general public, the way is covered; if instead the license or invitation is privately extended to a limited class, the way is not covered." *Stoddard, supra* at 182-183. "Moreover, it is the objective appearance of the way that is determinative of its status, rather than the subjective intent of the property owner." *Smithson, supra* at 549. Some of the typical physical circumstances that may bear on the question whether a way is accessible to the public within the meaning of the statute are the presence of street lights, hydrants, curbing, and paving. We recognize, however, that the absence of these elements is not dispositive, as some public roadways in many rural communities lack lighting, curbing, and hydrants. See, e.g., *Muise, supra* (paved private road without curbing furnishing access to trailer park was covered by statute); *Smithson, supra* (unpaved way furnishing access to business not covered by statute during weekend when business not open, but court strongly implying it would be covered during business operating hours); *Kiss, supra* (shopping center parking lot covered by statute where presence of pay phones, automatic teller machine, and newspaper distribution boxes "created the reasonable expectation among members of the public that they were welcome to operate their vehicles in the parking lot in order to access those

services that were uniquely available when the shops were closed").

Here, the place in question is a private driveway and parking area that only serves two residences, containing three dwelling units in total. It neither contains nor leads to any businesses or public accommodations. There is nothing in the appearance of the driveway or parking area that would give an impression to the general public or members thereof that it is anything other than a private driveway or that public use was invited, notwithstanding that it is neither gated nor posted. In our view, these circumstances foreclose its consideration, as matter of law, as a way or place to which the public has access as invitees or licensees.

Despite the ways and places to which subsequent case law has extended the statute's reach, it has yet to extend it to all places that an operator may have physical access. See *Commonwealth* v. *George*, 406 Mass. at 639-640. In no case brought to our attention has mere physical accessibility by one operating a motor vehicle and who is not a trespasser been deemed minimally sufficient, as matter of law, to qualify as a "way or place to which members of the public have access as invitees or licensees." G. L. c. 90, § 24(1)(*a*)(1). See *Smithson, supra* (where the court found that the characteristics of the road on a holiday weekend were not such that members of the public could reasonably infer they had an invitation to travel despite the fact the public had physical access to the road). Here, in our view, the facts beyond its physical accessibility by nontrespassers, namely, that the driveway and parking area were shared by and accessible to the occupants and guests of two residential buildings, are not sufficient to bring these places under the statute's reach. To decide otherwise would be to essentially overrule the requirement that, in cases such as this, members of the public must be able to reasonably conclude, from the physical circumstances of the way, that it is open for travel to invitees or licensees. Doing so would read the word "public" out of the statute or treat as superfluous this word of limitation included by the Legislature, or add words to a statute beyond those the Legislature has chosen to include. See *Boone* v. *Commerce Ins. Co.*, 451 Mass. 192, 197, 199 (2008). We are mindful of the

reasons expressed by our colleague in dissent, and as he expressed in a recent concurring opinion in *Commonwealth* v. *Belliveau,* 76 Mass. App. Ct. at 836; however, for the foregoing reasons, based upon the uncontested facts of this record and applying the case law that has developed concerning this element of the offense since the governing statute was last amended, members of the public cannot conclude, as matter of law, that this driveway is open to them for travel as invitees or licensees. See *Commonwealth* v. *Smithson,* 41 Mass. App. Ct. at 549; contrast *Commonwealth* v. *Kiss,* 59 Mass. App. Ct. at 250.[6] The defendant's motion for a required finding of not guilty should have been allowed.

For the foregoing reasons, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.

*So ordered.*

SIKORA, J. (dissenting). My colleagues have composed a characteristically thorough survey of the case law. However, I must respectfully decline to join in its application to the undisputed facts presented by this appeal. In my view, this case harbors a significant issue of first impression: whether the common area entryways and parking zones of multiple-unit residential buildings constitute "any place to which members of the public have access as invitees or licensees" within the meaning of the Commonwealth's primary statute prohibiting driving impaired by alcohol. G. L. c. 90, § 24(1)(a)(1). None of the cited precedents has addressed that categorical question.[1] It lies open for analysis. The language of the statute permits its application to such places;

---

[6]If the interpretations appearing in these cases are not as intended by the Legislature, a course correction is legislatively available.

[1]The decisions collected by the majority, *ante* at 572-573, present the following circumstances. See *Commonwealth* v. *George,* 406 Mass. 635, 639 (1990) (a public school baseball field; not covered by the statute); *Commonwealth* v. *Hart,* 26 Mass. App. Ct. 235, 236-238 (1988) (private way extension of a public road abutted by business outlets is a way to which members of the public have right of access as invitees or licensees); *Commonwealth* v. *Muise,* 28 Mass. App. Ct. 964, 965-966 (1990) (a paved private road extending from a public highway to a mobile home trailer park is a way to which members of the public have a right of access as invitees or licensees);

and its public safety purpose powerfully commends the coverage of those places by the act. The contrary interpretation artificially partitions the field of danger created by the impaired driver.

*Factual background.* Some elaboration of the facts is useful. In addition to testimony, the undisputed evidence at trial included two photographic exhibits depicting the scene of the collision. They show two residential buildings set back from a main road. The defendant's single-unit cottage is situated to the left; a two-story, two-unit building is located at the right. The two structures face inward toward each other with their sides toward the main road.

The main road has no sidewalks. A paved wide-mouthed entryway (accommodating two to three car widths) leads directly from the main road, expands to form an apron of about six car widths between the structures, and then enlarges further toward the rear and diagonally behind the buildings. The breadth of the rear apron between and behind the dwellings would accommodate six to eight parked vehicles. No barriers or signs appear at the mouth of the entryway or at any point in the apron. No markings designate or separate any portion of the entire paved area. Four mailboxes stand on the main road to the left of the entryway. Practicably, any visitor by motor vehicle to any of the

*Commonwealth* v. *Smithson,* 41 Mass. App. Ct. 545, 549-553 (1996) (fatal accident along a gated road into a commercial sand pit; not a way to which the members of the public have a right of access as invitees or licensees under the identical wording of G. L. c. 90, § 24[2][*a*] [operating to endanger] and § 24G[*b*] [motor vehicle homicide]); *Commonwealth* v. *Brown,* 51 Mass. App. Ct. 702, 712-713 (2001) (roads on a gated military installation admitting certified individuals are a covered place under § 24[1][*a*][1]); *Commonwealth* v. *Kiss,* 59 Mass. App. Ct. 247, 248-250 (2003) (a strip mall parking lot after business hours qualified as a covered place); *Commonwealth* v. *Stoddard,* 74 Mass. App. Ct. 179, 180 (2009) (unpaved, unilluminated, unsigned roadways of a gated campground are not covered under the statute); *Commonwealth* v. *Belliveau,* 76 Mass. App. Ct. 830, 831-835 (2010) (a recreational pier gated and signed "for authorized vehicles only" did not require classification for decision); *Commonwealth* v. *Cabral,* 77 Mass. App. Ct. 909 (2010) (an avenue "lined with single family homes" is a public way).

See also *Commonwealth* v. *Callahan,* 405 Mass. 200, 201-204 (1989) (a privately owned three-acre parcel without roads but used by trespassing children for go-cart racing is not a covered place within the identical language of G. L. c. 90, § 24G[b] [motor vehicle homicide] and G. L. c. 90, § 24[2][a] [leaving the scene after causing personal injury]).

residential units would drive through the entryway and park at the rear of the apron.

At trial it was undisputed that all the tenants within the two buildings had access to the driveway and parking area and that none of them could restrict access to those places. It was undisputed also that the defendant had driven her automobile into the side of the parked car of a resident of the two-unit building. The defendant failed field sobriety tests administered by the responding police officer. She failed also a subsequent breathalyzer test. Before trial she stipulated to operation under the influence of alcohol. The sole issue at trial was the nature of the location of that operation. Consequently the breathalyzer reading did not come into evidence. In the course of sentencing, the trial judge described it as "extremely high."

The judge imposed a sixty-day license suspension and ordered the defendant to complete a fourteen-day inpatient program and thereafter a period of supervised probation to include attendance at ninety Alcoholics Anonymous meetings. Successful completion of her probationary program would make her eligible for dismissal of the criminal charge. G. L. c. 90, §§ 24D, 24E.

*Analysis.* Our case turns on the meaning of the statutory clause, "Whoever, upon any way or in any place to which the public has a right of access, or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle while under the influence of intoxicating liquor . . . shall be punished." G. L. c. 90, § 24(1)(*a*)(1), as appearing in St. 1994, c. 25, § 3. For the following reasons I conclude that the intoxicated defendant collided with her neighbor's car "in [a] place to which members of the public have access as invitees or licensees." Three methods of construction lead me to that conclusion, all of them approved as traditional guidance: the language of the provision; the cause or occasion for its enactment; and the discoverable legislative intent or purpose.[2]

---

[2]The classic Massachusetts formulation for construction appears in *Hanlon v. Rollins*, 286 Mass. 444, 447 (1934).

"The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered

1. *Literal analysis.* We are dealing with a "place" and not a "way" because the common area apron does not constitute an artery of traffic. The clause refers to two places: "any place to which the public has a right of access" and "any place to which members of the public have access as invitees or licensees." We give effect to each substantive term and typically treat none as superfluous. *Baystate Med. Center* v. *Blue Cross of Mass., Inc.,* 382 Mass. 485, 491 (1981). *Commonwealth* v. *Shea,* 46 Mass. App. Ct. 196, 197 (1999), and cases cited. Consequently we have two different categories of "place." The word "any" modifies each and indicates comprehensive categories. The first designates broadly locations to which the public at large has a right of access. The second designates more specifically locations to which "members" within the public have access not by right but by invitation or permission. The word "members" denotes a class smaller than the general public. The assimilated common-law concepts of invitee and licensee will receive their usual meanings. See *Commonwealth* v. *Olivo,* 369 Mass. 62, 67 (1975), and cases cited (common-law terms appearing in criminal statutes retain their common-law definitions).

Upon those terms, an individual member of the public specifically invited or permitted to drive onto the apron by the owner or by a tenant of the residential buildings here falls within the operation of the clause. Nothing in the language of the clause indicates that a specific invitee or licensee, as distinguished from a random invitee or licensee, no longer qualifies as a "member[] of the public."[3] As I propose below, much of the purpose of the statute contradicts that assumption.

in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."

A later and briefer expression is "that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline,* 435 Mass. 353, 360 (2001), and cases cited.

[3]A specific invitee or licensee would be a person driving onto the "place" for a particular purpose, such as a social guest, a deliveryman, or visiting nurse, as mentioned below. A random invitee or licensee would be a person driving onto the place without such a purpose. Not the purpose of the endangered person, but rather the accessibility of the place, should determine its coverage by the statute.

2. *The cause and occasion of enactment.* In *Commonwealth v. Paccia*, 338 Mass. 4, 6 (1958), the court concluded that a privately owned paved area surrounding a restaurant and a market building and connecting two public ways, and admittedly the location of the defendant's impaired driving, did not qualify under the existing language of the statute as "a place to which the public has a right of access." The reasoning was

> "that the Legislature has not included within the scope of § 24 privately owned places, not shown to be subject to any general public easement of right. Criminal laws are to be strictly construed and are not to be extended merely by implication. . . . If the Legislature had wished to include areas like [the place at issue], to which members of the public have access only as business invitees or licensees, within the penal prohibitions of § 24, it would have been appropriate for it to have made a clear and specific provision to this effect."

Three years later the Legislature answered by addition of the current second phrase, "or upon any way or in any place to which members of the public have access as invitees or licensees." St. 1961, c. 347.[4] Significantly the Legislature did not use the limiting phrase suggested by the court, "*business* invitees or licensees" (emphasis supplied). Instead it employed the unmodified phrase, "invitees or licensees." At Massachusetts common law that phrase encompasses both business and social visitors. See *Mounsey v. Ellard*, 363 Mass. 693, 704-706 (1973) and cases cited. "And if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947). See *Commonwealth v. Olivo, supra.* The Legislature's use of "invitees or licensees" was an expansive reaction to the limiting rationale of the *Paccia* decision. The amended statute includes places of both commercial and residential character. It

---

[4]Subsequent decisions have treated the 1961 amendment as the specific response to the 1958 *Paccia* decision. See, e.g., *Commonwealth v. Callahan*, 405 Mass. at 205; *Commonwealth v. Hart*, 26 Mass. App. Ct. at 237; *Commonwealth v. Kiss*, 59 Mass. App. Ct. at 249-250.

applies to places both public and privately owned. See note 1, *supra*. The purpose of the presence of the endangered person or of his or her connection to the place bears no rational relationship to the culpability of the impaired driver or the vulnerability of the potential victim. The law's concern is the range of openness and the resulting degree of danger at the place of impaired operation.

3. *Legislative purpose.* The context of critical words will typically bring their purpose into sharper focus. "There is need to keep in view also the structure of the statute, and the relation, physical and logical, between its several parts." *Duparquet Co.* v. *Evans*, 297 U.S. 216, 218 (1936) (Cardozo, J.). See *Commonwealth* v. *Baker*, 368 Mass. 58, 68 (1975) (relating the disputed terms to "the associated words and phrases in the statutory context"); *Negron* v. *Gordon*, 373 Mass. 199, 201 (1977) (examining "other parts of the statute" to determine its "general meaning and object"), quoting from *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1823); *Commonwealth* v. *Hampe*, 419 Mass. 514, 518-520 (1995) (surveying the "statutory scheme" of which the contested provision was a part).

a. *Danger or mischief to be remedied.* For decades Massachusetts decisions in various settings have emphasized the lethal risk of impaired driving. See, e.g., *Commonwealth* v. *Brooks*, 366 Mass. 423, 425-426 (1974):

> "In this century the automobile has become a major implement of life and death. . . . Periodic empirical studies have confirmed the intuitively obvious: persons who drive while under the influence are likely to kill or injure themselves or others. A three year study (1963-1965) of 100 single car fatalities conducted by the Massachusetts State Division of Alcoholism, for example, revealed that over seventy-five per cent of the dead drivers had been drinking. See 1968 Senate Doc. No. 980."

See also, e.g., *Irwin* v. *Ware*, 392 Mass. 745, 756 (1984) (applying the Massachusetts Tort Claims Act, G. L. c. 258, § 2; "the threat [of intoxicated driving] is immediate; it threatens serious physical injury"; those endangered have "no chance to protect themselves"); *Commonwealth* v. *Blais*, 428 Mass. 294, 298

(1998) ("A drunk driver let loose on the highways is a deadly menace . . . to anyone sharing the highways with him"); *Commonwealth* v. *Fortune*, 57 Mass. App. Ct. 923, 924 (2003) ("Police officers have a duty to investigate citizen reports of criminal activity, particularly if the conduct implicates the safety of the public, as drunk driving does"); *Commonwealth* v. *Davis*, 63 Mass. App. Ct. 88, 91 (2005) (driving under the influence poses an extreme danger to the public).

Recidivism multiplies the peril of impaired driving. The addictive nature of alcoholism and the habitual character of abusive social drinking have received legislative recognition in a scheme of progressive sanctions. Within G. L. c. 90, § 24(1)(*a*)(1), the Legislature prescribes graduated punishments (fines, incarceration, and mandatory commitments) for second, third, and fourth or more convictions or assignments to education, treatment, or rehabilitation programs. *Id.* at first, fourth, fifth, sixth and seventh pars.

The legislative response, developed over decades (often after episodic tragedies) and codified in G. L. c. 90, § 24(1) through (4), and adjoining provisions, has accumulated an array of measures aimed at the criminal law's objectives[5] of deterrence, incapacitation,[6] and reformation[7] of the perpetrator.

b. *Deterrence.* "The purpose of G. L. c. 90, § 24, is to . . .

---

[5]See LaFave, Substantive Criminal Law §§ 1.5(a)(1)-(5) (5th ed. 2009); Wharton's Criminal Law §§ 1-5 (15th ed. 1993).

[6]To incapacitate the repeating offender, the Legislature has authorized progressively longer confinements ranging from a period of from zero to two and one-half years at a house of correction for a first offense, to from two and one-half to five years at State prison for a fifth or further conviction. See G. L. c. 90, § 24(1)(*a*)(1), first, fourth, fifth, sixth and seventh pars.

For a second conviction, the offender suffers license revocation without eligibility for restoration for two years, G. L. c. 90, § 24(1)(*c*)(2); for a third conviction, revocation without eligibility for restoration for eight years, § 24(1)(*c*)(3); for a fourth conviction, revocation without eligibility for restoration for ten years, § 24(1)(*c*)(3½); and for a fifth or further conviction, revocation for life, § 24(1)(*c*)(3¾).

[7]As terms of probation, a trial judge may require a first-time offender to undergo a residential treatment program and subsequent outpatient treatment if the judge finds that the offender would benefit and that the arrangement would not endanger public safety. G. L. c. 90, § 24(4). Analogous authority exists for a two-time offender whose earlier conviction arose more than ten years before the second. See G. L. c. 90, § 24D. Successful completion of probationary treatment programs earns the defendant eligibility for the

'deter individuals who have been drinking intoxicating liquor from getting into their vehicles, except as passengers.' " *Commonwealth* v. *McGillivary,* 78 Mass. App. Ct. 644, 647 (2011), quoting from *Commonwealth* v. *Sudderth,* 37 Mass. App. Ct. 317, 320-321 (1994). See *Commonwealth* v. *Ginnetti,* 400 Mass. 181, 184 (1987).

The words of § 24(1)(*a*)(1) establish three components of the offense of operating under the influence (OUI): operation of a motor vehicle; impairment by intoxicating liquor; and location accessible to members of the public. The case law has defined operation inclusively. It can extend to any intentional action by an occupant using a mechanical or electrical means that alone, or in sequence, will set in motion "the motive power" of the vehicle. *Commonwealth* v. *Uski,* 263 Mass. 22, 24 (1928). See *Commonwealth* v. *Merry,* 453 Mass. 653, 661 (2009), and cases cited; *Commonwealth* v. *Sudderth,* 37 Mass. App. Ct. at 319. Operation can occur even if the vehicle is motionless or the engine turned off. *Commonwealth* v. *Clarke,* 254 Mass. 566, 568 (1926) (defendant merely shifted gears). It is enough for the impaired defendant to have inserted the ignition key and turned it to the "on" position even without activation of the engine. *Commonwealth* v. *McGillivary,* 78 Mass. App. Ct. at 646.

The expansive meaning given to the concept of operation reflects the legislative purpose. "Given the well-established relationship between intoxicating liquor and motor vehicle injuries and fatalities [citations omitted], it does no violence to G. L. c. 90, § 24, to conclude that the real purpose of such statutes" is deterrence of the very entry onto the driver's seat of the impaired operator. *Commonwealth* v. *Sudderth, supra* at 320-321. Accord *Commonwealth* v. *McGillivary, supra* at 646-647.

c. *Lenity.* While the purpose of deterrence has characterized the interpretation of the element of operation of the vehicle, a rule of lenity has accompanied the interpretation of the location of its operation. The ambivalent development of the case law has resulted in a seemingly incongruous treatment of the act's

---

discretionary dismissal of the original charge. See G. L. c. 90, § 24E. In this instance the judge ordered the defendant to undergo a fourteen-day residential treatment, as authorized by § 24D. See note 11, *infra.*

purpose of public safety: a stringent definition of operation but a lenient definition of the location of the impaired operation.[8] Even after the Legislature's response to the *Paccia* decision in 1961, the court applied the principle of strict construction for the benefit of the accused, or lenity, to the issue of location. It viewed the amended language to refer primarily to "public parking lots or chain store parking lots." *Commonwealth* v. *Callahan*, 405 Mass. 200, 205 (1989).

For multiple reasons, a rule of lenity should have limited application to the definition of a "place" within the meaning of § 24(1)(*a*)(1) and to similar provisions employing the same words to proscribe operating under the influence. First, the rule of lenity operates against ambiguous statutory language depriving an accused of fair warning of punishable conduct. *Commonwealth* v. *Ryan*, 79 Mass. App. Ct. 179, 185-186 (2011). A modern automobile driver does not need more specific notice than the words of the current statutes. Getting behind the wheel in a state of impairment has the character of conduct malum in se. Certainly one could not reason that the defendant in this case would have driven more responsibly if only the statute had provided her a more precise definition of a publicly accessible place.

Second, the incidence of recidivism militates against the delayed identification of the impaired driver. His avoidance of sanction by reason of the less publicly, but still sufficiently publicly, accessible location of operation will delay both deterrence and rehabilitation and prolong the exposure of the public to repeated danger.

Finally, the courts and the Legislature have already created available measures of leniency for defendants undertaking genuine efforts of reform. A judge may order a continuance without a finding conditioned upon successful completion of an educational or treatment program, see G. L. c. 90, § 24(1)(*a*)(1), eighth par.; *Commonwealth* v. *Quispe*, 433 Mass. 508, 510-512 (2001), or order probationary periods encompassing treatment

---

[8]Our case presents a recurrent scenario: established impairment and operation; but contested location. See *Commonwealth* v. *Paccia*, 388 Mass. at 6; *Commonwealth* v. *Callahan*, 405 Mass. at 201; *Commonwealth* v. *Belliveau*, 76 Mass. App. Ct. at 831-832.

programs and interim loss of license, and enabling subsequent dismissal of charges upon successful completion of probation. See G. L. c. 90, §§ 24(4), 24D, 24E. Indeed, in this case, the judge employed a blend of moderate probationary sanctions for a first offense, comprised of a sixty-day license suspension, a fourteen-day inpatient program, and attendance at Alcoholics Anonymous meetings. Successful completion of probation would make the defendant eligible for discretionary dismissal of the original charge of OUI. See G. L. c. 90, § 24E, first and fifth pars.

The rule of lenity "is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to defendants." *Simon* v. *Soloman,* 385 Mass. 91, 102-103 (1982) (Hennessy, C.J.). To the same effect, see *Commonwealth* v. *Roucoulet,* 413 Mass. 647, 652-653 (1992). In short, the culpability of the conduct, the gravity of its danger, the risk of recidivism, and the array of calibrated sanctions available from the Legislature and the trial judge's sound discretion support the earliest possible identification of the offending driver. A grudging definition of the location of impaired driving obstructs that identification. The rule of lenity toward the impaired driver should not become a policy of laxity toward the public safety.

4. *Flawed premises.* From this view of the statute, several premises of the "place" decisions relied upon by my colleagues operate improbably and should reach a rational boundary line in this case. The first and most fundamental flawed premise is that specific invitees and licensees to the place of a common entryway and parking area do not constitute "members of the public."[9] Such an exclusion by the Legislature is unlikely. No doubt exists that an invitee or licensee several yards away on a main road qualifies as a member of the public. No sound

---

[9]The majority's central premise appears in the following quotation from *Commonwealth* v. *Stoddard,* 74 Mass. App. Ct. at 182-183. *Ante* at 573.

> "If the invitation or license is one that extends (or appears, from the character of the way, to extend) to the general public, the way is covered; if instead the license or invitation is privately extended to a limited class, the way is not covered."

As already discussed, the critical language of the statute for our case refers to

reason indicates that the social guest, the deliveryman, or the visiting nurse should lose the status of a member of the public at the instant when he or she turns from the roadway into the entryway and parking area of the several residences here. Their safety is no less valuable from the one moment to the next.

The rationale may be that the impaired driver cannot fairly expect to encounter members of the public in the common area. The defendant is not entitled to that expectation. The common character of the driving and parking area negates it.[10] It is a place of reasonably foreseeable multiple drivers, both residents and their visitors. It is not unfair or surprising for the law to require the defendant to regard their safety. The character of public access would be more obvious and less disputable if we were addressing the common entryway and parking areas of a condominium complex of several multi-unit buildings or of a garden apartment building. Nonetheless the common driveway, apron, and parking spaces of the two buildings and three units here fall on one side of a principled distinction: they are a place in which multiple operators will lawfully and foreseeably drive their vehicles by invitation or permission beyond the control and prediction of the defendant. That place falls within the concern of the statute. The visible concern is the range of access and therefore the degree of danger generated there by the impaired driver toward persons lawfully present.

Finally, the contrary view accepts the questionable notion of private enclaves of driving reliably separate from public areas. Few such places would seem to exist. Few impaired drivers will be able to operate their vehicles with discriminating choice between public and private locations. Their mental state and the interconnection of roadways belie the idea of harmless impaired driving in private locales. Here the apron site of the accident fed directly into a public roadway. The defendant was inferably driving to or from the road. She was yards and seconds away from it when she collided with her neighbor's car. The spot of the accident was a fortuity, and not a place of purposeful legis-

a "place" and refers to "members of the public," and not to "the general public" or a "class" of the public.

[10]We are not dealing with the narrow space of a single-unit dwelling's adjacent driveway.

lative exemption from irresponsible behavior. Its adjacency to a main roadway supports its character as a place of public access within the reach of the statute's public safety concern.

*Conclusion.* The accessible common area at issue here falls within the letter and purpose of the law against driving under the influence of intoxicating liquor. The statute is concerned with the probable aggregation of persons and not with the mechanical classification of places. The latter emphasis in the case law appears to be a residue of an unsuited rule of lenity already rejected by the Legislature. I would affirm the judgment of guilt and the resulting sentence.[11]

---

[11]In addition to the judgment of guilt, the defendant appeals from the judge's imposition of a fourteen-day inpatient program under G. L. c. 90, § 24D, even though she has now completed it. As a remedy for its alleged unlawfulness, she proposes an entitlement to reimbursement for the expense of the program.

I read the statute to permit such a sentencing element for a first offense. The first paragraph of § 24D, as amended through St. 2003, c. 28, § 15, authorizes for first offenders (1) driver education programs, and (2) "if deemed necessary by the court," treatment or rehabilitation programs. Such programs include "any public or private out-patient clinic" or "*any other* . . . program which the department of public health has accepted as appropriate for the purposes of this section." (Emphasis supplied.) *Id.* at sixth par. Here the judge's sentence of the defendant to a two-week inpatient course as one such "other" program was permissible as a matter of discretion if he deemed it necessary.

The defendant has no recognized entitlement to reimbursement of the cost of the remedial program. Her compensation must consist of its benefit.